SAGINAW COUNTY v STATE TAX COMMISSION
KALAMAZOO COUNTY v STATE TAX COMMISSION
SANILAC COUNTY v STATE TAX COMMISSION

1. CONSTITUTIONAL LAW—STATUTES—AMENDMENT OF STATUTES—TAX-
ATION.

A statute which abolishes and transfers the authority and func-
tions of the State Board of Equalization without republishing at
length the statutory framework thus amended for state equali-
zation of property taxes does not offend a provision of the state
constitution which requires that laws which are revised, altered
or amended must be re-enacted and published at length; the
statute is the result of a constitutional mandate to reorganize
the executive branch of state government which required im-
plementation by law within a set timetable and the Court
cannot presume that the framers intended that all the com-
piled laws affected should be re-enacted and republished at
length in the process (Const 1963, art 4, § 25, art 5, § 2; MCLA
16.186).

2. CONSTITUTIONAL LAW—STATUTES—AMENDMENT OF STATUTES—EX-
ECUTIVE ORGANIZATION ACT—NOTICE.

A major reason for requiring statutes which are revised or
amended to be re-enacted and republished at length is to give
notice to the Legislature and the public of what is being
changed, and the Executive Organization Act of 1965, which
consists of a sequence of several consolidations, transfers, and
abolitions, satisfies the requirement of notice; the Constitu-
tional provisions must be given a reasonable and practical
interpretation (Const 1963, art 4, § 25; MCLA 16.101 *et seq.*).

3. ADMINISTRATIVE LAW—TAXATION—STATE TAX COMMISSION—AD-
MINISTRATIVE PROCEDURES ACT—EQUALIZATION—CONTESTED
CASES—APPEALS.

State equalization proceedings by the State Tax Commission are

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 73 Am Jur 2d, Statutes §§ 21, 66.
[3, 4] 72 Am Jur 2d, State and Local Taxation §§ 799–801, 810.
[5, 6] 72 Am Jur 2d, State and Local Taxation § 753 *et seq.*
[7] 72 Am Jur 2d, State and Local Taxation §§ 777, 778.
[8] 72 Am Jur 2d, State and Local Taxation §§ 787, 820, 827.

exempt from the contested-case provisions of the administrative procedures act; an equalization appeal could have a drastic effect upon the operations of local government, and therefore the policy which favors exemption of individual assessment appeals from the procedural requirements of the administrative procedures act furnishes even stronger reason for excluding equalization proceedings and appeals (MCLA 24.201 *et seq.,* 211.152).

4. TAXATION—EQUALIZATION—PUBLIC BOARD MEETINGS ACT—VIOLA-
   TION OF STATUTE—PREJUDICE.

   Equalized property values set by the state tax commissioners were not rendered void because the commissioners, following adjournment to consider statements of county representatives, did not reconvene their meeting to announce completion of their task before release of their final report, where, even if such procedure violated the public board meetings act, the record does not indicate that the plaintiff counties were prejudiced or that equalizations were based on factors other than those discussed or available to all in attendance at the public session (MCLA 15.251 *et seq.).*

5. TAXATION—TRUE CASH VALUE.

   True cash value of taxable property is the usual selling price or fair market value; there is no support for an argument that "true cash value" means "net proceeds in the hands of the hypothetical seller".

6. TAXATION—EQUALIZATION—TRUE CASH VALUE—EQUALITY OF
   TREATMENT.

   A definition of true cash value of taxable property which would exclude the expenses of closing a sale, even if otherwise acceptable, would not furnish a basis for judicial intervention into state equalization proceedings where the taxable wealth of all 83 counties was determined by the same standard of usual selling price or fair market value; where there is a conflict, equality of treatment should predominate over standards of cash value.

7. TAXATION—EQUALIZATION—INCREASED VALUATION—FRAUD.

   An increase of 30% in a county's equalized valuation was not shown to be fraudulent where the record did not disclose any indication that the increase was due to any factors other than general inflation, new construction within the county, and overdue revaluation.

8. Administrative Law—State Tax Commission—Appeal and Error—Basis for Review.

Judicial review of a decision by the State Tax Commission relating to valuation is limited to questions of fraud, error of law, or adoption of wrong principles (Const 1963, art 6, § 28).

Appeal from State Tax Commission. Submitted Division 2 May 14, 1974, at Lansing. (Docket Nos. 17462, 17463, 17468.) Decided June 26, 1974. Leave to appeal applied for by Saginaw and Kalamazoo Counties.

Saginaw, Kalamazoo, and Sanilac Counties appeal from a decision of the State Tax Commission by leave granted, seeking a declaration that the 1973 state equalized valuations of taxable property were improperly adopted and are therefore void. Decision of State Tax Commission affirmed.

*Smith, Bovill, Joseph & Wolf, P. C.,* for plaintiff Saginaw County.

*Donald A. Burge,* Prosecuting Attorney, and *Duane T. Triemstra,* Chief of Civil Division, for plaintiff Kalamazoo County.

*Drillock & Atkins,* for plaintiff Sanilac County.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard R. Roesch,* Assistant Attorney General, for defendant.

Before: DANHOF, P. J., and T. M. BURNS and CARLAND,* JJ.

DANHOF, P. J. On May 29, 1973, the State Tax Commission (STC) adopted the 1973 equalized valuations for all 83 counties in Michigan. Saginaw, Kalamazoo and Sanilac counties appeal that decision by leave granted November 15, 1973. The

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

cases were consolidated for review because each raises a common issue of constitutional significance for our consideration.

## I

Plaintiffs contend that MCLA 16.186; MSA 3.29(86)[1] violates Const 1963, art 4, § 25, which reads:

"No law shall be revised, altered or amended by reference to its title only. The section or sections of the act altered or amended shall be re-enacted and published at length."[2]

The statute in issue reads:

"The state board of equalization created under section 1 of Act No. 44 of the Public Acts of 1911, as amended, being section 209.1 of the Compiled Laws of 1948, is transferred by a type III transfer to the state tax commission, and the state board of equalization is abolished."

Plaintiffs argue that the abolition of the State Board of Equalization and the transfer of its functions, duties and powers to the STC is null and void. They rely on *Alan v Wayne County*, 388 Mich 210, 285; 200 NW2d 628, 665 (1972), which indicates that when the Legislature intends to amend or alter existing statutes, the intention should be stated specifically "and those statutes must be amended or altered directly and republished as contemplated by Const 1963, art 4, § 25". The statute at issue abolishes and transfers the authority and functions of the State Board of Equalization without republishing at length the

---

[1] 1965 PA 380, § 86.

[2] The same mandate has been in every Constitution since 1850. Const 1850, art 4, §§ 20, 25; Const 1908, art 5, § 21.

statutory framework thus amended for state equalization.[3] Therefore, plaintiffs argue that all equalizations set by the STC are void.

Prior to *Alan, supra,* statutes which similarly abolished existing departments or offices, substituted the duties of various officials, or transferred powers to newly created entities without republishing at length the acts amended had been held not to violate the predecessors of art 4, § 25.[4] The *Alan* Court, though agreeing with Justice COOLEY in *Mahaney* that the constitutional provision must be given a reasonable interpretation, set nevertheless a higher standard for compliance with the plain words of the Constitution in light of the more highly sophisticated legislative tools available today.[5]

Nevertheless, the *Alan* Court acknowledged that it was not confronted with a situation requiring republication of a lengthy body of laws.[6] In the instant case, MCLA 16.186, *supra,* is but one of approximately 190 sections comprising the Executive Organization Act of 1965.[7] The entire act constitutes a sequence of similar consolidations, transfers and abolitions. The theory advocated by plaintiffs applies with equal force to the entire act because none of its sections republishes at length the statutes affected. To strike one section is to strike the entire act sooner or later. Yet the act itself is a result of the people's mandate in art 5, § 2 of the same Constitution which it allegedly offends:

---

[3] MCLA 209.1 *et seq.;* MSA 7.601 *et seq.*

[4] See *People v Mahaney,* 13 Mich 481 (1865); *Fornia v Wayne Circuit Judge,* 140 Mich 631; 104 NW 147 (1905); *People v Stimer,* 248 Mich 272; 226 NW 899 (1929).

[5] See *Alan, supra,* 388 Mich 210, 268–288; 200 NW2d 628, 656–666.

[6] *Alan, supra,* 388 Mich at 282; 200 NW2d at 663.

[7] 1965 PA 380.

"All executive and administrative offices, agencies and instrumentalities of the executive branch of state government and their respective functions, powers and duties, except for the office of governor and lieutenant governor and the governing bodies of institutions of higher education provided for in this constitution, shall be allocated by law among and within not more than 20 principal departments. They shall be grouped as far as practicable according to major purposes."

This mandate was not self-executing, but required implementation by law.[8] Reorganization by statute was to be completed within two years after the Constitution took effect on January 1, 1964.[9]

One of the most basic rules of statutory construction is to read statutes as a whole. Provisions should be read in context, not in isolation, and should be harmonized to give effect to all. Common sense dictates that the same approach be taken when the Constitution is the subject of inquiry. By art 5, § 2, the delegates to the Constitutional Convention envisioned consolidation and reorganization of the executive departments. In view of the time limitation on reorganization by statute, we cannot presume that the framers intended that all the compiled laws effected should be re-enacted and republished at length in the process. "The Constitution is a practical instrument", as Justice Catron remarked about its Federal brother, "made by practical men * * * ".[10] A contrary holding would bring the wheels of government screeching to a halt and would produce a situation where, "from mere immensity of material, it would be

---

[8] *McDonald v Schnipke,* 380 Mich 14; 155 NW2d 169 (1968).

[9] If reorganization remained incomplete at the expiration of that period, the Governor was given authority to make the initial allocation within one year thereafter by Executive Order. Const 1963, Schedule & Temporary Provisions, § 12.

[10] *Smith v Turner,* 48 US (7 How) 283, 449; 12 L Ed 702, 772 (1849).

impossible to tell what the law was".[11]

A major reason for the language of art 4, § 25 "is to require that notice be given to the Legislature and the public of what is being changed and the content of the act as revised, altered or amended".[12] In the unique context of this case, and giving the provision a reasonable and practical interpretation,[13] we hold that this notice requirement is satisfied by the 1965 act and that neither the Legislature nor the people were misled or deceived as to the act's scope and effect.

## II

Saginaw and Kalamazoo Counties contend that equalization proceedings are subject to the Administrative Procedures Act of 1969.[14] *Republic Development Corp v State Tax Commission,* 38 Mich App 166; 195 NW2d 923 (1972), and *Fisher-New Center Co v Detroit,* 38 Mich App 750; 197 NW2d 272 (1972), held that § 152, as amended, of the general property tax act[15] exempted the STC from the contested case provisions of the Administrative Procedures Act. Plaintiffs, while recognizing these cases, find them distinguishable because they were concerned with individual assessment appeals, rather than appeals from state equalization. We disagree. State equalization is an integral part of individual assessment determinations because it finalizes local assessed valuations which are

---

[11] *People v Mahaney, supra,* 13 Mich at 497.

[12] *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441, 472; 208 NW2d 469, 477 (1973).

[13] *Advisory Opinion, supra,* 389 Mich at 476; 208 NW2d at 479.

[14] 1969 PA 306, being MCLA 24.201 *et seq.;* MSA 3.560(101) *et seq.*

[15] 1969 PA 270, being MCLA 211.152; MSA 7.210. See also MCLA 24.312; MSA 3.560(212) whereby a reference to the 1952 administrative procedures act in any other law is deemed to be a reference to the 1969 act.

merely the tentative tax base.[16] Whereas individ-
ual assessment appeals do not have a drastic effect
upon the operations of local government, an equal-
ization appeal could have such an effect. There-
fore, the policy which favors exemption of individ-
ual assessment appeals from the procedural re-
quirements of the administrative procedures act
furnishes even stronger reason for excluding
equalization proceedings and appeals from a time-
consuming process which would necessarily im-
pede the apportionment and collection of taxes.

## III

Saginaw and Kalamazoo Counties contend that
the STC violated the public board meetings act[17] by
voting their final report in private session. The
STC agrees that its final equalization proceedings
are subject to the act, but argues that the proceed-
ings of May 29, 1973 fully complied therewith. The
purpose of the public board meetings act is to
provide members of the public with the opportu-
nity to be present and observe the manner in
which the public business is transacted.[18] Plaintiffs
do not deny that the May 29 session was open to
the public and attended by the representatives of
the several counties (including plaintiffs), members

[16] *School District No 9, Pittsfield Twp, Washtenaw County v Wash-
tenaw County Board of Supervisors,* 341 Mich 388; 67 NW2d 165
(1954); *Calumet & Hecla, Inc v Township of Allouez,* 363 Mich 671;
110 NW2d 585 (1961): MCLA 211.34; MSA 7.52.

[17] 1968 PA 261, being MCLA 15.251 *et seq.;* MSA 4.1800(1) *et seq.*
Section 1 defines "board," *inter alia,* as a "commission or other
governing body of any state * * * department created by law which
has for its purpose the performance of an essential governmental.
function." "Public meeting" is defined, *inter alia,* as "that part of any
meeting of a board during which it votes upon any * * * official
action * * * dealing with * * * the fixing of personal or property
rights, privileges, immunities, duties or obligations of any person or
group of persons."

[18] *Haven v City of Troy,* 39 Mich App 219; 197 NW2d 496 (1972).

of the press, the Legislature and others. Their claim is rather that the equalizations are void because the commissioners, following adjournment to consider the statements of the county representatives, did not reconvene their meeting to announce completion of their task before release of their final report. Assuming *arguendo* noncompliance with the act, the record is barren of any indication that plaintiffs were prejudiced thereby or that equalizations were based on factors other than were discussed or available to all in attendance.

## IV

Saginaw and Kalamazoo Counties contend that the STC erred when it rejected the argument that "true cash value"[19] means "net proceeds in the hands of the hypothetical seller." Plaintiffs argue that the expenses of closing a sale do not represent economic benefit to the seller and that therefore the true cash value of taxable property does not include expenses customarily incurred for abstracting, deed preparation, realtor's commission, revenue stamps, termite inspection and financing points. Plaintiffs cite no authority for this proposition. There is authority which we find persuasive and which holds that such a construction would be inconsistent with the term "true and fair value" contained in the Constitution of the State of Washington.[20] Furthermore, assuming that we could accept plaintiffs' definition of true cash value, still this would furnish no basis for judicial intervention in plaintiffs' behalf into the 1973 state equalization proceedings since the taxable wealth of all

[19] Const 1963, art 9, § 3.

[20] *State ex rel Morgan v Kinnear,* 80 Wash 2d 400; 494 P2d 1362 (1972).

83 counties was determined by the same standard of usual selling price or fair market value. Where there is conflict between the standards of cash value and equality of treatment, the latter should predominate.[21]

## V

Sanilac County contends that the 1973 increase in its equalized value amounts to fraud and that equalization should have been fixed at 30% less than what the STC determined it to be. This claim is considerably weakened when it is seen that the 1973 equalized value ($189,069,293) for taxable real property[22] in the County is only 15% above the estimate made by the County Board of Commissioners ($164,319,474) and only 8% above the figure ($175,000,000) proposed by the County's representative at the session of May 29. It further appears that the increase complained of was partially the result of substantial information gathered by the STC's field staff concerning current assessment levels and needed revaluation in eight townships bordering on the more populated and faster growing counties of Lapeer, St. Clair and Tuscola. Plaintiff's figure of a 30% increase arises from a comparison between the county's 1972 state equalized valuation and the 1973 state equalized valuation. On the record before us, there is no indication that this increase was due to factors other than those claimed by the STC, *i.e.,* general inflation, new construction within the county and overdue revaluation.

---

[21] *Allied Supermarkets, Inc v Detroit,* 391 Mich 460; 216 NW2d 755 (1974).

[22] There was no disparity between the equalized value of taxable personal property recommended by the Sanilac County Board of Commissioners and that adopted by the STC.

Other issues raised by plaintiffs do not merit decisional discussion. Suffice it to say that our review is limited to questions of fraud, error of law or adoption of wrong principles.[23] The annual task of ascertaining "whether the relative valuation between the several counties is equal and uniform",[24] like the intermediate steps of local assessment and county-wide equalization, necessarily involves resolution of conflicting factual claims. Where reasonable minds could differ as to the facts, we have neither the expertise nor the authority to intervene.[25]

Affirmed. No costs, a public question.

All concurred.

---

[23] Const 1963, art 6, § 28.

[24] MCLA 209.4; MSA 7.604.

[25] *Auditor General v Wayne County Supervisors,* 216 Mich 256; 185 NW 157 (1921).