THE RAVEN, INC. v CITY OF SOUTHFIELD

Opinion of the Court

1. Intoxicating Liquors—Liquor Control Commission—Regulations—City Ordinances.

The Liquor Control Commission has the power to exercise complete control of all alcoholic beverage traffic within the state, limited only by express provisions or necessary implications embodied in the Liquor Control Act, and if a city ordinance is found to be in conflict with a regulation of the Liquor Control Commission, the regulation will control.

2. Intoxicating Liquors—Liquor Licenses—Local Control—Statutes—City Councils—Mayors—Veto.

The intent of the Legislature in enacting a statutory provision giving cities local control over the grant or denial of liquor licenses was only to grant such control, not to specify the procedures to be followed in exercising that control; therefore, a mayor's veto of a city council's approval of a liquor license, made pursuant to a provision of the city charter granting the mayor veto power over all ordinances, resolutions and proceedings of the council, is effective to support the denial of the issuance of the license (MCLA 436.17; MSA 18.988).

Dissent by Danhof, J.

3. Statutes—Language—Construction.

*Statutory language which is plain, certain and unambiguous is not subject to construction by the courts.*

References for Points in Headnotes

[1] 45 Am Jur 2d, Intoxicating Liquors § 31.

[2, 4] 45 Am Jur 2d, Intoxicating Liquors §§ 155, 159.

Power or discretion of local authorities under statute requiring their approval of application for liquor license before issuance of license by state board, or providing for issuance of a local license to one holding license from state board. 132 ALR 1235.

[3] 73 Am Jur 2d, Statutes § 254.

4. INTOXICATING LIQUORS—LIQUOR LICENSES—STATUTES—LOCAL CON-
    TROL—CITY COUNCILS—MAYORS—VETO.

   *A statute which delegates the authority to approve liquor licenses
   to the "local legislative body" does not thereby include the local
   executive; therefore, a mayor has no authority to prevent the
   issuance of a license by his veto of a resolution of the city
   council approving the license (MCLA 436.17; MSA 18.988).*

Appeal from Oakland, James S. Thorburn, J.
Submitted February 5, 1976, at Lansing. (Docket
No. 24376.) Decided June 28, 1976. Leave to appeal
applied for.

Complaint by The Raven, Inc. against the City of
Southfield for mandamus and for a declaratory
judgment following a veto by the mayor of South-
field of the city council's approval of an application
by plaintiff for a liquor license. Summary judg-
ment for plaintiff. Defendant appeals. Reversed.

*Lawrence S. Katkowsky, P. C.,* for plaintiff.

*Sigmund A. Beras,* Southfield City Attorney, for
defendant.

Before: M. J. KELLY, P. J., and V. J. BRENNAN
and DANHOF, JJ.

V. J. BRENNAN, J. Defendant, City of Southfield,
appeals from a summary judgment granted by the
Oakland County Circuit Court which construed
MCLA 436.17; MSA 18.988 as rendering invalid
the mayor's veto of a Southfield City Council reso-
lution approving a class "C" liquor license.

Plaintiff, The Raven, Inc., a Michigan corpora-
tion, made an application to the Michigan Liquor
Control Commission to obtain a new class "C"
liquor license in connection with the operation of
its business located in the City of Southfield, Oak-
land County, Michigan. Pursuant to MCLA 436.17;
MSA 18.988, which provides that applications for

such licenses "shall be approved by the local legis-lative body in which said applicant's place of business is located before being granted a license by the commission", the Michigan Liquor Control Commission referred the application to the City of Southfield. The Southfield City Council, consisting of seven members, at a meeting held on February 10, 1975, passed a resolution approving plaintiff's application for a new class "C" license by a vote of four to three. On February 14, 1975, Donald F. Fracassi, mayor of the City of Southfield, vetoed the council resolution. An attempt by the council to override the veto was defeated.

Plaintiff instituted an action for mandamus and declaratory judgment on February 25, 1975 in the Oakland County Circuit Court, demanding that the court declare the veto of the mayor to be void and of no effect and to declare that the action taken by the city council on February 10, 1975 constituted the approval required under MCLA 436.17; MSA 18.988. Plaintiff's motion for sum-mary judgment was granted on April 30, 1975, and defendant has appealed to this Court.

The sole issue on appeal is the construction of the phrase "approved by the local legislative body" in MCLA 436.17; MSA 18.988. Plaintiff contends that the phrase means exactly what it says, that there is no mention whatever of any mayoral veto in the act, and that upon approval by the council by a majority vote, the license should be issued with or without the approval of the mayor. De-fendant contends that the Michigan Liquor Con-trol Act does not purport to spell out how the approval of "the local legislative body" should be obtained, and that the Court should construe the phrase consistently with the power of the mayor to veto resolutions or ordinances, consistent with the

spirit of the Michigan home rule act, MCLA 117.1 *et seq;* MSA 5.2071 *et seq.*

The regulation of establishments selling alcoholic beverages is a special area and one in which the local community has been given a great deal of control. *Bundo v City of Walled Lake,* 395 Mich 679; 238 NW2d 154 (1976). This was so long before the passage of the Michigan Liquor Control Act, as is seen by the case of *O'Halloran v Mayor & Recorder of Jackson,* 107 Mich 138; 64 NW 1046 (1895). In that case plaintiffs presented a liquor bond to the common council of the city of Jackson for its approval, pursuant to 1887 PA 313, § 8.[1] A motion to approve the bond was carried eight to seven. These proceedings were referred to the mayor who returned the same with his disapproval, giving his reasons therefor. The plaintiffs then filed a petition in the circuit court for mandamus to compel the mayor to file his approval of the bond and the recorder to endorse upon the bond the approval of the council. The prayer of the plaintiffs was granted as to the recorder and dismissed as to the mayor. The defendant appealed to the Michigan Supreme Court, contending that the mayor's signature was required. The plaintiffs con-

[1] 1887 PA 313, § 8 provided, *inter alia,*

" * * * if the principal of said bond is known by said township board or the board of trustees, or common council of the village or city to be a person whose character and habits would render him or her an unfit person to conduct the business of selling liquor, they, the said township board or board of trustees, the council or common council of the village or city, as the case may be, shall refuse to endorse said bond with their approval. Such bond shall not be received by the county treasurer unless the approval thereof by the township board or the board of trustees, the council or common council of the village or city shall be duly certified thereon in writing, by the clerk or recording officer of such township, village or city, and the principal shall not be allowed to sell spirtuous, malt, brewed, fermented, or vinous liquors in any other building or place than that specified in said bond, without giving notice and executing another bond in the manner above prescribed."

tended that the common council was the final judge of the sufficiency of liquor bonds, and that nothing remained to be done after the action of the council to make the bond effective but the endorsement of such action on the bond by the recorder of the city, who served as the clerk of the council. In resolving this issue, the Supreme Court stated:

"The mayor is made the chief executive officer of the city, with certain powers in the charter enumerated. He has no vote or voice in the deliberations of the council, but the charter provides that no ordinance or resolution shall be of any force without the written approval of the mayor or other person performing for the time being the duties of his office, etc. The approval of the bond cannot be said to have required an ordinance or resolution. It was approved by motion, which was carried by a majority vote. The liquor statute requires the approval of the council, and the charter has not so modified or changed the statute that the mayor's approval was necessary.

"The court below was of the opinion that the approval of the mayor was unnecessary, and we think that conclusion correct. The petition was therefore dismissed as to the mayor, and the order was made requiring the recorder to indorse the approval of the council upon the bond. That order must be affirmed." 107 Mich 138, 140.

This case clearly and expressly stands for the proposition that under a statute requiring the approval of the city council for the issuance of a liquor "bond" a majority vote of the council at a legal meeting is sufficient to approve the bond, in the absence of conflicting provisions in the city charter, and that unless the charter provides otherwise, the approval by the mayor is unnecessary. Moreover, we think the case impliedly holds that approval by the mayor is required if the city

charter so provides. This case has never been either overruled or distinguished. That this case was decided prior to the enactment of the home rule act in 1909, MCLA 117.1; MSA 5.2071, causes us to conclude that the rule therein should apply thereafter *a fortiori.* It is certainly true, as plaintiff forcefully contends, that the Michigan Liquor Control Commission has the power to exercise complete control of all alcoholic beverage traffic within the state of Michigan, and that this power is limited only by express provisions or necessary implications embodied in the legislative act. *Terre Haute Brewing Co, Inc v Liquor Control Commission,* 291 Mich 73; 288 NW 339 (1939). It is also true that if a city ordinance is found to be in conflict with a regulation of the Michigan Liquor Control Commission, the regulation will control. *Noey v Saginaw,* 271 Mich 595; 261 NW 88 (1935). Clearly, if the Legislature intended to prescribe the precise method by which a local community could exercise its control over the issuance of a liquor license, pursuant to MCLA 436.17; MSA 18.988, a local ordinance in contravention thereof would be invalid. Without question the Michigan Legislature intended by its enactment of the Michigan Liquor Control Act to continue the long tradition of giving local control in the granting or denying of liquor licenses. It seems unlikely to us that, having granted such local control, the Legislature would have also intended that this local control be exercised in one specific manner and none other. We can think of no social policy which would be served thereby.

We hold, therefore, that the Michigan Legislature, by its provision in MCLA 436.17; MSA 18.988 that in certain communities liquor licenses "shall be approved by the local legislative body", in-

tended only to grant local control in the dispensation of liquor licenses, and did not intend to specify the procedures to be followed in exercising such control.

In the *O'Halloran* case, *supra,* the mayor's approval of a liquor bond was held unnecessary, because the council approved the bond by a motion, and the city charter did not grant to the mayor veto power over motions. In the case at bar, we find that the charter of the City of Southfield provides:

"The mayor shall have the power to veto all ordinances, resolutions and proceedings of the council * * *."

We hold, therefore, that the mayor's veto of the resolution granting approval to plaintiff's liquor license was made pursuant to the city charter of the City of Southfield and was effective. If the City of Southfield desires to have its council approve liquor licenses without being subject to a mayoral veto, the city can amend its charter to so provide.

Reversed.

M. J. KELLY, P. J., concurred.

DANHOF, J. *(dissenting).* It is axiomatic in the law that where statutory language is plain, certain and unambiguous, such language is not subject to construction by the courts. In the words of Justice COOLEY:

"There are certain well-settled rules for the construction of statutes, which no court can safely disregard. Where the statute is plain and unambiguous in its terms, the courts have nothing to do but to obey it. They may give a sensible and reasonable interpretation to legislative expressions which are obscure, but they

have no right to distort those which are clear and intelligible. The fair and natural import of the terms employed, in view of the subject matter of the law, is what should govern * * * .

\*     \*     \*

"And, believing as I do, that a high and sacred regard for law and constitutional order is being begotten of these times, I regard it as especially important that the judiciary should do nothing to postpone or to check this result by decisions which strain or bend the meaning of words to meet unexpected emergencies." *People v Blodgett,* 13 Mich 127, 167–168, 173 (1865).

See also *Dussia v Monroe County Employees Retirement System,* 386 Mich 244, 249; 191 NW2d 307 (1971). *Lansing v Lansing Twp,* 356 Mich 641, 648–649; 97 NW2d 804 (1959). *Jones v Grand Ledge Public Schools,* 349 Mich 1, 9–10; 84 NW2d 327 (1957).

In order for this Court to reach the conclusion propounded by the majority we must find the following:

(1) That the statutory language in question, to wit: "shall be approved by the local legislative body", is susceptible of more than one meaning.

(2) That the most proper meaning of "local legislative body" consistent with legislative intent is "the local legislative body with the approval of the executive, if required by the municipality".

I cannot agree that either of these conclusions is warranted. Nothing could be plainer than the term "legislative body," as employed in this context. To what purpose would the state Legislature add the modifier "legislative" if they intended that the local executive should join in the approval process? The Legislature could have chosen to employ terms such as "local unit of government" or "local legislative body and executive", but did

not do so. The term "legislative body" has only one plain meaning and we are bound by that meaning.

The majority relies upon what it infers the meaning of *O'Halloran v Mayor & Recorder of Jackson,* 107 Mich 138; 64 NW 1046 (1895), to be. At the outset I note that *O'Halloran* construes the liquor act of 1887, 1887 PA 313, long since repealed, which act does not contain the term "local legislative body". Nevertheless, the majority looks to *O'Halloran* for aid in interpreting this term.

*O'Halloran* was decided by concluding that "the approval of the mayor was unnecessary". The case does not address the question of the mayor's authority to veto legislative approval where such authority appears to be granted by local ordinance or charter. Hence, any discussion of this question is dictum and the majority's authority is inference upon dictum.

The majority agrees that the exclusive power to regulate liquor in this state is vested in the Legislature and in the Liquor Control Commission. Const 1963, art 4, § 40. The statute here in question, MCLA 463.17; MSA 18.988, constitutes a delegation of exclusive legislative power to the City of Southfield's "legislative body". The statute does not, and the city charter cannot, confer any authority upon the mayor of that city. I, therefore, conclude that the ruling of the circuit court was correct and I would affirm its judgment.