RUDNIK v MAYERS

OPINION OF THE COURT

1. ZONING—ORDINANCES—RECORDING—ESTOPPEL.

Failure of municipal officials to follow the recording requirements of a zoning ordinance should not be held to estop them from enforcing the other provisions of the ordinance.

2. ABANDONMENT—PROPERTY—RIGHTS—WORDS AND PHRASES.

Abandonment of property or a right is the voluntary relinquishment thereof by its owner or holder, with the intention of terminating his ownership, possession, and control, and with-

---

REFERENCES FOR POINTS IN HEADNOTES

[1, 5]  58 Am Jur, Zoning § 228.
[2]  58 Am Jur, Zoning §§ 153, 154.
[3]  58 Am Jur, Zoning § 254.
[4]  58 Am Jur, Zoning § 153 *et seq.*
[6]  58 Am Jur, Zoning § 184.
[7]  58 Am Jur, Zoning § 215.
[8]  58 Am Jur, Zoning § 14.
[9]  58 Am Jur, Zoning § 154.

out vesting ownership in any other person; the necessary elements of abandonment are intent and some act or omission on the part of the owner or holder which clearly manifests his voluntary decision to abandon.

3. ZONING—NONCONFORMING PRIOR USE—ABANDONMENT—INTENT—PROOF—BUILDING PERMITS—MANDAMUS.

Facts which would support an inference of intention to abandon a prior nonconforming use under a zoning ordinance must be established in a mandamus action to compel the issuance of a building permit and there were none in the record where the defense was grounded on that which plaintiff's grantor did or did not do; the intent of the grantor was the crucial nonproved element of the case and she was not called as a witness.

DISSENTING OPINION

ADAMS, SWAINSON, and WILLIAMS, JJ.

4. ZONING—NONCONFORMING USE—ABANDONMENT—EVIDENCE.

*Evidence was clear that nonconforming use of property, a cottage, was abandoned where the last known tenant had left in 1962, as of 1963 the building was uninhabitable and no attempts were made to change this uninhabitable condition, a red tag was placed on the property by a county building inspector to signify that the cottage was unsafe and unfit for occupancy, and when plaintiff purchased the property he did not use the building as a dwelling.*

5. ZONING — NONCONFORMING USE — ABANDONMENT — TOWNSHIPS — RECORDING — ESTOPPEL.

*Township's failure to follow the provisions of its zoning ordinance which required the recording of nonconforming uses and the discontinuance of them neither validated nor eliminated a nonconforming use and there were no exceptional circumstances to take a case out of the general rule that the failure of township officials to perform their functions cannot estop the township from enforcing its ordinance where improvements to a cottage were so slight that the township had no notice of plaintiff's intent to resume a nonconforming use and, when plaintiff requested a building permit, the township promptly denied it and informed him that the nonconforming use had been abandoned.*

6. VENDOR AND PURCHASER—PROPERTY—ZONING—ORDINANCES.

*A purchaser is presumed to buy property with knowledge of zoning ordinance requirements concerning the land's use.*

7. DEEDS — GRANTEE — GRANTOR — ZONING — NONCONFORMING USE
   — ABANDONMENT.

   *A grantee can take no more than what his grantor had; if a nonconforming use had been abandoned, a purchaser could not obtain what his grantor did not have to sell.*

8. ZONING—NONCONFORMING USE—CONSTITUTIONAL LAW.

   *The right of government to zone, and consequently to limit property owner's use of his land, is well established; however, zoning must permit the continuance of any existing nonconforming use; any elimination of a nonconforming use that would constitute a taking of property without just compensation is constitutionally forbidden.*

9. ZONING—NONCONFORMING USE—ABANDONMENT—EVIDENCE.

   *Zoning ordinance provision that terminates a nonconforming use if the same is discontinued for three months, even as a rule of evidence, cannot be sustained as fair and reasonable; while an owner of property might decide to abandon a nonconforming use within such a short period of time, there are also many reasons why he would not make such a determination because the use might not be utilized due, for example, to depressed times, inability to secure a tenant or some other reason.*

Appeal from Court of Appeals, Division 2, J. H. Gillis, P. J., and Bronson and O'Hara, JJ., reversing and remanding Washtenaw, John W. Conlin, J. Submitted December 8, 1971. (No. 8 December Term 1971, Docket No. 53,186.) Decided May 4, 1972.

27 Mich App 560 affirmed.

Complaint by Benjamin Rudnik against the Clerk of Northfield Township and the Washtenaw County Building Inspector for mandamus to compel certification of a construction plan and the issuance of a building permit. Judgment for defendants. Plaintiff appealed to the Court of Appeals. Reversed and remanded. Defendants appeal. Affirmed.

*L. Edwin Wenger* (*Larry D. Vande Vrede,* of counsel), for plaintiff.

*William F. Delhey,* Prosecuting Attorney, and *Karl V. Fink,* Assistant Prosecuting Attorney, for plaintiff Washtenaw County Building Inspector.

*Reading & Etter,* for defendant Clerk of Northfield Township.

T. G. KAVANAGH, J. Plaintiff purchased a lot with a cottage on it on Whitmore Lake in the summer of 1965. At the time of this purchase the cottage was vacant and in need of various repairs. Certain of these repairs were performed by plaintiff that summer. The following year plaintiff applied to the Northfield Township for a building permit in order to repair the structure's foundation which had become unsafe over the years due to runoff rain from the road in front of the cottage. He was informed no permit would be issued him as his lot size did not conform to the minimum necessary footage for building purposes.

Plaintiff commenced mandamus proceedings in Washtenaw County Circuit Court to compel issuance of the permit.

Plaintiff's complaint alleged that while the lot size did not conform to the township ordinance use for a cottage it qualified as a nonconforming use having been so used prior to the passage of the zoning laws of the township, and plaintiff was therefore entitled to the permit.

Defendant's answer relied on Northfield Township Ordinance, art V, § 5.04, which reads:

"NON-CONFORMING USE—TERMINATION OF:

"When a non-conforming use of building or land is discontinued through vacancy, lack of operation

or otherwise, for a continuous period of three (3) months, thereafter no right shall exist to maintain on said property a non-conforming use."

The defendants contended that pursuant to that section because the premises in question had remained vacant for the period of three months the prior nonconforming use was lost because of abandonment.

Testimony was received from several township officials as well as plaintiff. The trial court found the prior nonconforming use of the premises had been abandoned by his grantor pursuant to § 5.04, *supra*. Further, the court found the township was not estopped from claiming loss of nonconforming-use status because it had failed to record the required record of such status loss for the doctrine that the plaintiff is presumed to know the law.

The Court of Appeals reversed holding the trial court inappropriately applied the "presumed knowledge of the law" doctrine in this case and said further:

" * * * the township board and the zoning board cannot wilfully ignore an important part of its own ordinance and thereby deprive plaintiff of rights conferred by another part of the same ordinance."

This Court granted defendants leave to appeal.

On appeal the defendants pose two questions:

I. Does the failure of township officials to comply with the requirements of §§ 7.01 and 7.02 of the Northfield Township Zoning Ordinance estop defendants and their respective municipalities from asserting that plaintiff's nonconforming use was discontinued or abandoned under § 5.04 of the same ordinance?

II. Has plaintiff demonstrated the clear legal right necessary to entitle him to obtain a writ of mandamus?

We agree with the defendants that the failure of the municipal officials to follow the recording requirements of the ordinance should not be held to estop them from enforcing the other provisions of the ordinance.

What we find controlling, however, is the trial judge's finding that plaintiff's grantor had abandoned the nonconforming use of the premises.

Section 5.04 speaks of the termination of status when the nonconforming use is "discontinued".

"In interpreting the term 'discontinued' the courts take a very liberal attitude toward the restrictive nature of the provisions in zoning regulations dealing with the resumption of nonconforming uses and hold that the word 'discontinued' is synonymous with 'abandoned.'" 18 ALR2d 725, § 3, p 729.

The trial court recognized this and found the "property was abandoned".

"'Abandonment' of property or a right is the voluntary relinquishment thereof by its owner or holder, *with the intention* of terminating his ownership, possession, and control, and without vesting ownership in any other person." 1 CJS, Abandonment, § 1, p 4 (emphasis added).

The necessary elements of "abandonment" are intent and some act or omission on the part of the owner or holder which clearly manifests his voluntary decision to abandon.

It has been stated:

" * * * as a general rule that the abandonment of a nonconforming use and the consequent termination of any legal right thereto results, generally speaking, from a concurrence of facts, circumstances, and the intention of the owner of the premises or other person entitled to the use." 18 ALR2d, 725, § 4, p 730, and cases cited thereat.

And further:

"Since intention is a necessary element in the concept of abandonment, it follows that lapse of time is not per se decisive of whether a nonconforming use has been abandoned, it being merely one of the factors which may evidence such an intention." *Ibid*, at 731.

Additionally it may be stated:

" * * * as a well-settled rule that a temporary cessation of a nonconforming use or the temporary vacancy of buildings used for a nonconforming use does not in itself operate to effect abandonment of the nonconforming use, where the circumstances, conditions, and statements of the owner are consistent with or evidence of an intention not to abandon the nonconforming use." 18 ALR2d 725, § 6, p 733, citing "*Adams* v. *Kalamazoo Ice & Fuel Co.* (1928) 245 Mich 261, 222 NW 86; *Civic Asso. of Dearborn* v. *Horowitz* (1947) 318 Mich 333, 28 NW2d 97."

The defense in this case is grounded on that which plaintiff's grantor, Mrs. Leece, did or did not do. Mr. Hanselman, defendant city building inspector, testified he had observed the premises on many occasions and because of the nonoccupancy and the state of disrepair of the property he concluded it was abandoned. His testimony together with the terms of the ordinance led the trial court to conclude the property had been abandoned.

In its opinion the trial court also stated that the then owner, Mrs. Leece, attempted to give the property to the township. There is no competent evidence in the record to support this statement.

The intent of Mrs. Leece was the crucial non-proved element of this cause. She was not called as a witness, and while intention to abandon can be inferred, facts which would support this inference must be established. There are none in this record.

We affirm the judgment of the Court of Appeals for the reasons stated herein.

Costs to the plaintiff.

T. M. KAVANAGH, C. J., and BLACK and T. E. BRENNAN, JJ., concurred with T. G. KAVANAGH, J.

ADAMS, J. (*dissenting*).

## I. THE FACTS AND PROCEEDINGS

This case concerns a cottage located at Whitmore Lake, Northfield Township, Washtenaw County.[1] The building does not meet present zoning standards of the township because the minimum land area for R–2 residential must be 6,000 square feet if a sanitary sewer is available. The cottage is located on an area somewhat less than 4,000 square feet with no available sewer. Plaintiff claims that a nonconforming use existed when the zoning ordinance was passed in 1954 and that such use has continued. The ordinance allows a nonconforming use but it would be terminated if the use is discontinued for three months.

The parties agree that there was a nonconforming use of the cottage when the ordinance was passed. The major question is whether that use was abandoned either before or after plaintiff's purchase of the property in June 1965.

The cottage consists of two bedrooms, a kitchen and a porch. Mr. Hanselman, Director of the Washtenaw County Building Department, who was in charge of issuing building permits, described the condition of the cottage upon its inspection between 1962 and 1963, as follows:

---

[1] For another case involving much the same issues as this one, see *Dusdal* v *City of Warren*, 387 Mich 354 (1972).

"[W]e found that the cottage was placed on cedar posts and the ground area was rather soft and the posts had sunk and rotted away. The floors were rotten. The windows were broken out. The door on the room on the side where the chemical toilet was, was gone, just a screen door on it, and that was half-smashed, and the windows were broken. On further investigation we found the kitchen sink drained through the kitchen floor onto the ground, and the well—the only one that we could find was a small pipe driven just outside of the room where the chemical toilet was, and there was a pitcher pump on that. There was no furniture. There was no electricity connected to the house at that time."

The cottage also lacked heating and cooking facilities.

Plaintiff admits that a lessee vacated the cottage in 1962. There is no evidence of anybody thereafter using the cottage until his purchase in June 1965. In 1963, Mr. Hanselman placed a red tag on the property to signify that the cottage was unsafe and unfit for occupancy. In 1964, Mrs. Leece, the then owner, gave the cottage to the township for the purpose of removal of the building. During a township board meeting on September 9, 1964, a motion was passed to give the cottage to a Gene Hadley if he would remove it, and if he did not remove it by October 1, 1964 to give the cottage to Mrs. Leece "for removal". The October 1 deadline was not met. Mrs. Leece, instead of removing the cottage, sold it to plaintiff.

Plaintiff bought the property in the state it was in during the years 1961–1964. He painted the cottage, repaired the roof and windows, and cut the lawn. He never stayed in it overnight as there were no sanitary facilities. He moved in a couch, refrigerator and kitchen set. Plaintiff testified: "Actually, what we use it for is picnic purposes, swimming. We brought a picnic table out and we go out there and sit out there. But we have been in and out of the building." Upon recall, he stated: "We used

the inside of the building if it rained or was cold outside, and for changing purposes for the beach, and we sat around the building."

In July 1966, Mr. Rudnik contracted to have the foundation of the cottage repaired. To obtain a building permit to proceed with this improvement, he stated that the sagging condition of the cottage would result in injury to his family or guests. The permit was refused on the ground that the nonconforming use had been abandoned, and that plaintiff did not have the necessary 6,000 square feet and sanitary facilities to improve the cottage. In August 1967, plaintiff instituted an action for mandamus in the Circuit Court for Washtenaw County to compel the building inspector to issue certification of the construction plan and to compel the township clerk to issue a building permit.

The judge decided at the trial that there were two major issues to be determined: 1) whether the nonconforming use had been abandoned; and 2) whether the failure of the township to file the nonconforming use and its subsequent abandonment, as required by the township's ordinance, estopped defendants from asserting such abandonment.

After the first day of hearings, during which Mr. Rudnik and Mr. Hanselman testified, the judge stated: "[T]here is very positive evidence of an abandonment, and I would like to know what the legal effect of whatever the township did or didn't do would have on the case." No objection was made to the judge's observation. At the end of the second day of hearings, the judge stated: "Obviously, and I would definitely indicate that from the testimony, in fact, the house was not occupied in any event for several years during the period—at least for over three months during the period '61, '62, '63. I don't think that the type of occupancy would be such that it would have to be shown that it was occupied every month in order to avoid that three months regulation because it's a summer cottage. On the other hand,

the testimony would indicate that for several years nobody occupied it there." No objection was made to this conclusion.

The court thereafter issued its judgment. "The court finds from the testimony that the property had not been occupied for at least two years prior to the purchase by plaintiff, and, when plaintiff purchased the property it was not habitable * * * ." As for the failure of the township board and the zoning board to comply with sections 7.01 and 7.02 of the ordinance, which required the recording of noncon- ᐧ forming uses and the discontinuance of such, "the failure of township officials to perform their functions cannot estop the Township from enforcing its Ordinance. Township of White Lake vs. Amos (*supra*) [371 Mich 693 (1963)]."

On appeal to the Court of Appeals (27 Mich App 560), that Court reversed and remanded the case to the circuit court. The majority opinion stated that the township was estopped from denying plaintiff a building permit because of its own failure to comply with the ordinance. It was emphasized that plaintiff purchased without notice of the nonconforming use.

Judge J. H. GILLIS, writing in dissent, held that: "As a general rule a city cannot be estopped from enforcing its own zoning ordinances." Although there are exceptions to this rule, "here plaintiff purchased the property in question *with notice* of the non-conforming use".

We granted leave to appeal. (384 Mich 809.)

## II. ABANDONMENT

Both parties agree that when the zoning ordinance was passed in 1954, there was a nonconforming use as a cottage. It is clear from the testimony that as of 1963 the building was uninhabitable. A red tag was placed on the property. The last known tenant had left in 1962. No attempts were made to change this uninhabitable condition. The cottage was given

to the township so that the building could be removed. When plaintiff purchased the property, he did not use the building as a dwelling. The evidence is clear that the nonconforming use of the property was abandoned. We affirm the finding of the trial judge to that effect.

### III. Estoppel

We agree with the trial court's reliance on the holding in *White Lake Twp* v *Amos*, 371 Mich 693 (1963). There are no exceptional circumstances in this case to take it out of the general rule that the failure of township officials to perform their functions cannot estop the township from enforcing its ordinance. The improvements to the cottage were so slight that the township would have had no notice of Rudnik's intent to resume the nonconforming use. When Rudnik requested a building permit, the township acted promptly by denying it and informing him that the nonconforming use had been abandoned.

In *Pittsfield Twp* v *Malcolm*, 375 Mich 135 (1965), an estoppel was allowed but this Court pointed out that the case was an exception to the general rule—a building permit had been issued, a building valued at $45,000 was constructed, the building was unique (kennel); and the city waited 10–1/2 months after construction of the building before it acted.

A purchaser is presumed to buy property with knowledge of zoning ordinance requirements concerning the land's use. *Patchak* v *Lansing Twp*, 361 Mich 489, 497 (1960). A grantee can take no more than what his grantor had. *Gowdy* v *Gordon*, 240 Mich 558, 564 (1927); *Stevens* v *Royal Oak Twp*, 342 Mich 105, 107 (1955); 73 CJS, Property, § 15, p 207. If the nonconforming use had been abandoned, Rudnik could not obtain by purchase what his grantor did not have to sell.

Rudnik knew the building had not been used for some time. He testified: " * * * I knew at the time I bought the building that I couldn't stay there, live in it, stay overnight, or for a day or two * * * ," and he further said that he "imagined" that it had been abandoned as a dwelling. The township's failure to follow the recording provisions of its ordinance neither validated nor eliminated a nonconforming use. Neither Rudnik nor the township gained or lost anything by the nonaction of the township officials.

The Court of Appeals erred in holding that the township was estopped to enforce its zoning ordinance because of its failure to follow the recording provisions as to nonconforming uses of the ordinance.

### IV. ORDINANCE PROVISIONS RE ABANDONMENT AND RECORDING

The right of government to zone, and consequently to limit a property owner's use of his land, is well established. When zoning does take place, however, it must permit the continuance of any existing nonconforming use. While the elimination of such a use is recognized to be desirable, the means by which it can be eliminated are limited. Any elimination of a nonconforming use that would constitute a taking of property without just compensation is constitutionally forbidden.

The Northfield Township zoning ordinance seeks to terminate a nonconforming use if the same is discontinued for three months. In *Dusdal* v *City of Warren, supra,* we have provided for an evidentiary rule that would shift the burden of proof as to abandonment of a nonconforming use, if it is discontinued or abandoned for a one-year period. A period of three months, even as a rule of evidence,

cannot be sustained as fair and reasonable. While an owner of property might decide to abandon a nonconforming use within such a short period of time, there are also many reasons why he would not make such a determination. The use might not be utilized due, for example, to depressed times, inability to secure a tenant, or some other reason. Consequently, a three-month rule cannot be sustained.[2]

The provisions of the Northfield Township ordinance with regard to recognition of nonconforming uses by a recording procedure or their discontinuance by similar means attempt to validate, or do away with, such uses by the unilateral action of township officials. These provisions need not be considered for a determination of this case, and since the issue of their validity, constitutionally or otherwise, has not been raised, it need not be decided at this time.

The Court of Appeals is reversed. The circuit court is affirmed. Costs to defendants.

SWAINSON and WILLIAMS, JJ., concurred with ADAMS, J.

---

[2] While there are cases in other jurisdictions in which the courts have upheld the validity of ordinance provisions to the effect that a given period of time shall constitute discontinuance or abandonment of a nonconforming use, the cases deal with time periods ranging from six months to two years. See: *State ex rel Peterson v Burt*, 42 Wis 2d 284; 166 NW2d 207 (1969); *Auditorium, Inc v Board of Adjustment of Mayor and Council of Wilmington*, 47 Del 373; 91 A2d 528 (1952); *Canada's Tavern, Inc v Town of Glen Echo*, 260 Md 206; 271 A2d 664 (1970); *Franmor Realty Corp v Le Boeuf*, 104 NYS2d 247 (1951); *Village of Spencerport v Webaco Oil Co*, 33 App Div 2d 634; 305 NYS2d 20 (1969).